UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
DEMETRIUS HICKS                                     )
                                                    )
                PLAINTIFF,                          )
                                                    )        CASE NO.  07-0123 (ESH)
        v.                                          )
                                                    )
ASSOCIATION OF AMERICAN                             )
MEDICAL COLLEGES, et al.,                           )
                                                    )
                DEFENDANTS.                         )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

        Plaintiff Demetrius Hicks opposes Defendants' Motion to Dismiss filed pursuant to Fed.

R. Civ. P. 12(b)(6).

        Defendants advance three arguments in support of their motion:  Defendants contend that

(1) Plaintiff has not engaged in protected activity because his complaint was merely an informal

internal complaint, see Defs.' Memorandum, at 4-6; (2) the individual defendants cannot be held

liable under the subject statutes, see id. at 6-7; and (3) there is no basis for a wrongful discharge

tort, see id. at 8-9.  Defendants are wrong; their motion should be denied.

## I.

        In deciding a motion under Rule 12(b)(6), the Court must "accept the allegations of the

complaint as true, draw[] all inferences in the plaintiff's favor, and [] affirm 'only if it is clear

that no relief could be granted under any set of facts that could be proved consistent with the

allegations.'" Broudy v. Mather, 460 F.3d 106, 116 (D.C. Cir. 2006), quoting Croixland Props.

Ltd. P'ship v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999), quoting in turn Hishon v. King &

Spalding, 467 U.S. 69, 73 (1984) (alterations in Broudy).

Furthermore, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Facts beyond such notice are unnecessary and will not support a motion to dismiss under Rule 12(b)(6).  See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 515 (2002).

## II.

Plaintiff contends that his termination constituted unlawful retaliation in violation of both the federal Fair Labor Standards Act, 29 U.S.C. §§ 215(a)(3) ("FLSA") and the District of Columbia Minimum Wage Act, D.C. Code §§ 32-1010(3) ("DCMWA").

During Plaintiff's employment with Defendant Association of American Medical Colleges ("AAMC"), AAMC apparently determined to convert some of its salaried employees to non-exempt status.  (Complaint at ¶ 10).  Recognizing that some employees were entitled to overtime pay due to this conversion, Defendant AAMC requested from the affected employees an accounting of their time and attendance in an effort to award some pay retroactive for a specified period, for the overtime worked but not previously paid.  (Id. at ¶14).

Erik James, one of the re-classified employees, submitted paperwork in accordance with Defendant AAMC's instruction. (Id. at ¶15).   Defendant Whitlock Stewart, upon receipt of Mr. James's submission, reacted negatively to his accounting, concluded that he could not be trusted and told Plaintiff that she was initiating an investigation and would terminate Mr. James if she could prove his accounting was wrong. (Id. at ¶16).

Plaintiff had first-hand knowledge of Mr. James's efforts and supported Mr. James's claim to overtime and advocated on his behalf regarding his entitlement to pay for the overtime

worked.  (<u>Id.</u> at ¶17).  Plaintiff retrieved computerized time records which reflected Mr. James's efforts and presented them to Defendant Whitlock Stewart as part of his advocacy and in an effort to assist Mr. James in his efforts to collect the overtime pay due him. (<u>Id.</u> at ¶17). Eventually, Mr. James's request was successful and he was paid the overtime he was due. (<u>Id.</u> at ¶19).

However, Mr. James's success was not without ramifications.  Defendant Whitlock Stewart, angered by Plaintiff's advocacy on behalf of Mr. James, undertook an investigation of Plaintiff,  apparently in an attempt to find something to rely upon to terminate Plaintiff's employment. (<u>Id.</u> at ¶¶18 and 20).  Although Plaintiff had by that point been employed by Defendant AAMC for approximately 15 months, Defendant Whitlock Stewart retrieved Plaintiff's personnel file, reviewed his application form and contacted his prior employer to test the veracity of Plaintiff's representations on his employment application. (<u>Id.</u> at 22).  Claiming she found two misstatements on the application, Defendant Whitlock Stewart terminated Plaintiff's employment for allegedly lying on his employment application. (<u>Id.</u>).  Plaintiff would not have been fired but for his unwelcome advocacy on Mr. James' behalf.  (<u>Id.</u> at ¶24).

Plaintiff initiated this suit by filing a Verified Complaint in the Superior Court for the District of Columbia.  On January 18, 2007, Defendants collectively removed this action to this Court.

For the reasons stated herein, Defendants' motion to dismiss should be denied and this case should proceed to discovery.

# III.

**A.     Plaintiff's Verified Complaint Properly Alleges Retaliation Under the FLSA and the DCMWA.**

The Fair Labor Standard Act makes it unlawful "to discharge . . . an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3).  Similarly, the DCMWA declares it unlawful for an employer to "[d]ischarge or in any other manner discriminate against any employee because that employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this subchapter or has testified or is about to testify in any proceeding."  D.C. Code § 32-1010(3).

Employees alleging retaliation under the FLSA must show that "1) that he or she engaged in activity protected by the statute; 2) that the employer . . . engaged in conduct having an adverse impact on the plaintiff; and 3) that the adverse action was causally related to the plaintiff's exercise of protected rights."  Passer v. American Chemical Soc., 935 F.2d 322, 331 (D.C. Cir. 1991) (interpreting FLSA as incorporated into Age Discrimination in Employment Act).

Anti-discrimination provisions traditionally are construed in an expansive manner to protect employees from those employers who would deny them statutory rights.  Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 301-02 (1985).  Indeed, courts have implied anti-retaliation provisions even where they do not exist when necessary to provide protection so as to not give impetus to the practice sought to be eliminated by the remedial litigation.  See, Cox

4

v. Consolidated Rail Corp., 557 F.Supp 1261, 1265 (D.D.C. 1983) (42 U.S.C. § 1981 construed

to include a prohibition against retaliation although the Act is silent on the subject); Setser v.

Novack Inv. Co., 638 F.2d 1137, 1146-47 (8th Cir. 1981) (same).

Defendants advance two arguments with respect to Plaintiff's prima facie case.  Both

arguments should be rejected.

### 1.    Informal Actions Short of Judicial or Administrative Filings Can Constitute Protected Activity.

Defendants argue that Plaintiff's so-called "internal complaint" does not constitute

protected activity under the FLSA or the DCMWA.  Defendants are wrong.  As demonstrated

below, the majority of courts to address this issue have held that a retaliation complaint can

survive under circumstances akin to Plaintiff's.

While the District of Columbia Circuit Court has yet to address this issue, no fewer than

eight federal circuit courts have done so, and have determined that so-called internal complaints

are entitled to protection under the anti-retaliation provisions of the FLSA.  In the First, Third,

Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits, an internal complaint is sufficient to

trigger coverage under the statute.  See Lambert v. Ackerley, 180 F.3d 997 (9th Cir. 1999);

Valerio v. Putman Assoc., 173 F.3d 35 (1st Cir. 1999) (employee wrote a letter to supervisor

complaining of misclassification as "exempt" and of failure to pay overtime); EEOC v. Romeo

Community Schs., 976 F.2d 985 (6th Cir. 1982) (employee complained to supervisor that her

depressed pay "[broke] some kind of law"); EEOC v. White & Son Enterp., 881 F.2d 1006 (11th

Cir. 1989) (employees complained to owner that men, but not women, received pay raises and

that men were generally paid more for equal work); Rayner v. Smirl, 873 F.2d 60, 64 (4th Cir.

5

1989) (intra-company complaints are protected activity under the federal Railroad Safety Authorization Act, 45 U.S.C.§ 441(a));[1] Brock v. Richardson, 812 F.2d 121 (3d Cir. 1987) (employer erroneously believed that employee had filed a complaint with the Department of Labor); Love v. Re/Max of Am., 738 F.2d 383 (10th Cir. 1984) (employee sent memorandum to boss, attaching copy of Equal Pay Act, protesting higher salaries paid to men); Brennan v. Maxey's Yamaha, 513 F.2d 179 (8th Cir. 1975) (after employer was ordered by Department of Labor to pay employees remedial wages, employee refused to cooperate with employer's plan to have employees endorse checks back to employer).

   a.    **Other federal circuit courts have rejected precisely the argument Defendants raise herein.**

Defendants argue that Section 215(a)(3),[2] protects only those employees who "fil[e] a complaint in the context of formal legal actions."  (Defs.' Memo at 4-5).  Multiple circuit courts, when faced with this argument, have disagreed, as should this Court.

   **1.**

In Brock v. Richardson, 812 F.2d 121 (3d Cir. 1987), the employer argued that "the [employee] must show both that the discharged employee engaged in one of the specified overt acts and that the employer was aware of the act," and that "because [the employee] did not in fact

---

[1]    Rayner is included here because although the case addresses the Federal Railroad Safety Authorization Act, that Act's anti-retaliation provision, 45 U.S.C. § 441, contains language that is the same in all material respects as the FLSA's anti-retaliation provision and because the same court later in Ball v. Memphis Bar-B-Q Company, Inc., 228 F.3d 360, 363 (4th Cir. 2000), a FLSA case, referenced Rayner as interpreting a "complaint clause" "to include intra-corporate complaints" (emphasis added).

[2]    This Section makes reference to a "complaint," initiating any "proceeding," testifying in any proceedings, serving on an industry committee.

6

file a complaint, and because the [trial] court did not find that [the employee] engaged in one of

the acts specifically protected under the statute," his retaliation claim must fail.  812 F.2d at 123.

The Third Circuit rejected this argument, holding instead that "courts interpreting the anti-

retaliation provision have looked to its animating spirit in applying it to activities that might not

have been explicitly covered by the language."  Id. at 124.

Similarly, the Eleventh Circuit in EEOC v. White & Son Enterp., 881 F.2d 1006 (11th

Cir. 1989), contemplated and rejected the restrictive interpretation Defendants urge.  Specifically,

the Court held that

> even though the charging parties had not yet filed formal charges
> of discrimination with the EEOC, the discharge by appellant can
> still be retaliatory in nature.  The charging parties did not perform
> an act that is explicitly listed in the FLSA's anti-retaliation
> provision; however, we conclude that the unofficial complaints
> expressed by the women to their employer about unequal pay
> constitute an assertion of rights protected under the statute.  The
> FLSA in general is remedial in purpose.  See Tennessee Coal, Iron
> & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S. Ct.
> 698, 702, 88 L. Ed. 949 (1944). . . .  The anti-retaliation provision
> of the FLSA was designed to prevent fear of economic retaliation
> by an employer against an employee who chose to voice such a
> grievance. [Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S.
> 288, 292, 80 S. Ct. 332, 335, 4 L. Ed. 2d 323 (1960).]  By giving a
> broad construction to the anti-retaliation provision to include the
> form of protest engaged here by the charging parties, its purpose
> will be further promoted.

881 F.2d at 1011.

The Sixth Circuit rejected the instant Defendants' arguments in short order.  In EEOC v.

Romeo Community Schs., 976 F.2d 985 (6th Cir. 1992),  the employer argued as the instant

Defendants do, that § 215(a)(3) "should be strictly construed and a retaliation claim allowed only

for actions occurring after the complaining employee has instituted formal proceedings with the

EEOC." 976 F.2d at 989. The Sixth Circuit held that the district court's adoption of Defendants'

position was "clearly erroneous." Id. All that was needed for the employee to set forth her claim

of retaliation, the Sixth Circuit held, was for Plaintiff to allege that she protested her lower wage

payments relative to men and that she suffered an adverse action as a result. Id. at 990.

### 2.

Defendants rely on Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360, 363-65 (4th Cir.

2000), but do not explain that Ball addresses only the provision in the FLSA's anti-retaliation

prohibition dealing with the protection available to employees who testify or are about to testify

in a FLSA proceeding. Ball does not address the FLSA's "complaint" clause, except to note, at

228 F.2d at 364, the holding in Rayner, supra, where such language was held "to include intra-

corporate complaints." Thus, Ball v. Memphis Bar-B-Q helps Plaintiff's position and not

Defendants' position.

### 3.

Defendants direct the court to what is erroneously called "existing precedent in this

judicial district" (Defs.' Memo. at 5), for the proposition that intra-company complaints are not

protected. In fact, however, U.S. District Judge Robertson in Rodriquez v. P.R. Fed Affairs

Admin., denied the employer's Rule 12(b)(6) motion to dismiss and "allow[ed] further

development of the record," 338 F.Supp 2d 125, 130-31 (D.D.C. 2004). Although the court

commented gratuitously on Defendants' issue, it did not rule the point Defendants urge. U.S.

District Judge Urbina in Mansfield v. Billington, 432 F.Supp 2d 64 (D.D.C. 2006), on the other

hand, ruled that the plaintiff's letter to her supervisor did not constitute a protected activity under

the Equal Pay Act. It appears he did so, however, on the mistaken belief that the Court of

8

Appeals in <u>Ball v. Memphis Bar-B-Q Co., Inc.</u>, <u>supra</u>, concluded that informal intra-company complaints are unprotected and that only complaints in formal legal actions are protected. 432 F.Supp.2d at 73-75. In fact, as noted elsewhere herein at p.5 n.1, the Fourth Circuit previously ruled in <u>Rayner v. Smirl</u>, <u>supra</u>, that intra-company complaints constitute protected activity.

> **b.**   **Informal activity must be protected under the statute because to hold otherwise would render words and phrases in the statute meaningless and superfluous.**

The well-reasoned opinions of the several courts cited above in Section III, 1, a, that have addressed this issue note that the statute's language would be rendered "mere surplusage" if formal complaints were the only events that triggered its application. The same courts hold that the elastic definitions of words left undefined by the statute could clearly encompass informal complaints.

In <u>Valerio v. Putman Assoc.</u>, 173 F.3d 35 (1st Cir. 1999), the employee wrote a letter to her employer's office manager protesting her classification as "exempt" under the FLSA (based upon her job duties) and threatened to complain to the Department of Labor for failure to pay her overtime compensation. 173 F.3d at 38. Shortly thereafter, the employer terminated her. Faced with the same arguments the instant Defendants raise, the First Circuit examined the language of § 215(a)(3) and concluded that the phrase "has filed any complaint" is "susceptible to different interpretations," and that when Congress failed to specify that any complaint must be filed with a court or agency, Congress "left open the possibility that it intended 'complaint' to relate to less formal expressions of protest, censure, resentment, or injustice conveyed to an employer." <u>Id.</u> at 41. The First Circuit noted also that under Defendants' formulation, the phrase "or instituted or caused to be instituted any proceeding under or related to this chapter" would be rendered

9

redundant in the statute.  Id. at 42.

In perhaps the most comprehensive opinion on the issue, the Ninth Circuit in Lambert v. Ackerley, 180 F.3d 997 (9th Cir. 1999), also rejected Defendants' position.  First, the Ninth Circuit noted the purpose of the anti-retaliation provision – "to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act," 180 F.3d at 1004 – would be thwarted if an employee were required to pursue formal charges to receive protection and if employees who pursued informal means were denied protection under the Act, id.  The Lambert Court also engaged in a lengthy discussion based on the plain language of the statute, justifying the application of the Act to internal complaints lodged with the employer:

> [T]he language of § 215(a)(3) is fully consistent with this
> conclusion.  By its terms, the anti-retaliation provision prohibits
> retaliation against an employee who has "filed any complaint or
> instituted or caused to be instituted any proceeding under or related
> to this chapter."  29 U.S.C. § 215(a)(3).  First, we conclude that
> "any complaint" related to the FLSA includes complaints made to
> employers.  If "any complaint" means "any complaint," then the
> provision extends to complaints made to employers.  Second, we
> are also convinced that the statutory term "filed" includes the filing
> of complaints with employers.  When drafting the language of
> § 215(a)(3), it is reasonable to assume that Congress was aware of
> the practice, in many union and non-union workplaces, of requiring
> employees to "file" grievances and complaints with their union
> and/or employer before instituting any further internal or external
> proceedings.  Given the widespread use of the term "file" to
> include the filing of complaints with employers, it is therefore
> reasonable to assume that Congress intended that term as used in
> § 215(a)(3) to include the filing of such complaints.  Finally, we
> note that § 215(a)(3) protects employees who file complaints
> "under or related to this chapter."  The defendants' construction of
> the statute would render the "or related to" language superfluous.
> As we read the statute, complaints filed "under" the FLSA are
> those complaints provided for in the Act, i.e., those complaints
> filed with the Department of Labor or the federal court as specified
> in the Act. Complaints that are not "under" the FLSA but are

10

> "related to" it, on the other hand, are those complaints filed outside
> of court and the Department of Labor that relate to the subject
> matter of the FLSA, for example, those complaints filed <u>with an
> employer</u>.  In sum, the statutory grant of protection to employees
> who "file[ ] any complaint" "related to" the FLSA extends to
> employees who complain to their employer about an alleged
> violation of the Act.

<u>Id.</u> at 1004-05 (footnote omitted; emphasis in original).

The weight of the well-reasoned caselaw demonstrates that the actions which Plaintiff

Hicks undertook are subject to the protection of the applicable anti-retaliation provisions of the

FLSA and the DCMWA.

**2.    Plaintiff 's Conduct Warrants the Status of  Protected Activity.**

Defendants suggest that Plaintiff's allegations do not reflect that he engaged in protected

activity.  Defs.' Memo., at 5.  Defendants are wrong.

Plaintiff alleges in his Verified Complaint that Defendant Whitlock Stewart, upon

requesting an accounting of overtime hours worked by certain re-classified employees, did not

credit as legitimate the submission provided by employee Erik James.  A fair reading of the

complaint indicates that Plaintiff took a position contrary to that of Ms. Whitlock Stewart,

advocating for Mr. James's entitlement to compensation, lending his credibility to Mr. James's

submission and by providing additional documentation demonstrating further Mr. James's

entitlement to full compensation.  (Complaint at ¶¶15-18).

Plaintiff's attempts to advocate for the full payment of wages to employees constitute

protected activity.  As alleged, Defendant Stewart was resisting paying Mr. James the amounts

due him in overtime compensation, in contravention of the goals and intent of the FLSA and the

DCMWA.  Had Plaintiff not interceded, it is likely that Defendants would have denied Mr.

James the full measure of compensation due him.  Plaintiff was acting in furtherance of the goals

of these statutes; advancing the goals of the statute is exactly the type of activity that the

retaliation provision protects.

McDaniel v. Transcender, LLC, 119 Fed. Appx. 774 (6th Cir. 2005), is particularly

analogous to Plaintiff's situation.  Ms. McDaniel, hired as a human resources manager by

Transcender, was tasked to conduct an evaluation of the FLSA status of the company's

employees (i.e., exempt or non-exempt), because prior to her arrival all of the employees had

been classified as "exempt."  After performing an analysis of the written job descriptions, she

recommended that certain classes of people be re-classified as "non-exempt."  Her attempts

apparently encountered some resistance in the office; the changes she implemented were quickly

reversed, and soon thereafter she was terminated.  The Court held, in these circumstances, that "a

jury could reasonably infer that McDaniel's failure to implement the changes in the FLSA

classifications was the reason for her termination," thereby creating a genuine issue of fact, and

precluding summary judgment.  119 Fed. Appx. at 780.

For the same reason, Plaintiff's attempts to secure the proper payment due Mr. James,

therefore, constitutes protected activity under the anti-retaliation provision of the statutes.

**B.    Plaintiff Need Not, at this Stage, Allege That He Took Action "Adverse To" the Defendants.**

Defendants' second argument is that Plaintiff's Complaint is defective because "it is clear

that he 'never crossed the line from being an employee merely performing his job duties to an

employee lodging a complaint or asserting a right.'" Defs.' Memo. at 6, quoting McKenzie v.

Renberg's Inc., 94 F.3d 1478, 1487 (10th Cir. 1996).  Defendants acknowledge, however, that

"the Complaint lacks allegations regarding Plaintiff's job description," id., without which the determination Defendants urge cannot be made.

Plaintiff need not allege that he "stepped outside his role" in order to survive a motion to dismiss. The Verified Complaint presently provides "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz, supra, at 507. Whether Plaintiff must prove that he "stepped outside of his role" can and should be deferred for future adjudication after discovery has been completed.

**C.    Plaintiff's Allegations are Sufficient to Impose Liability Upon Defendants Whitlock Stewart and Kirch.**

Defendants argue also that individual liability should not attach to Plaintiff's claims, and urge that Defendants Whitlock Stewart and Kirch be dismissed from this action. Defendants' arguments are not supported by the law.

The FLSA defines an employer in the broadest terms possible: it includes "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). The statutory language clearly contemplates that it is not merely the organizational defendant which may be held liable, but a broad universe of persons acting in the employer's interest with respect to the challenged decisions. The DCMWA is similarly broad: it defines an "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee. . . ." D.C. Code § 32-1002(3).

The statute's language has been widely interpreted to impose individual liability upon private-sector employers. See Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987) ("The

word 'employer' is defined broadly enough in the Fair Labor Standards Act . . . to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation.").[3]

The cases Defendants cite in support of their motion to dismiss do not help their argument. Morrison v. International Programs Consortium, 253 F.3d 5, 11 (D.D.C. 2001), for example, addresses a question entirely different from the one presented here. Morrison answers the question of whether the plaintiff was "employed" by the defendant, and does not address who "employed" that plaintiff. Indeed, the Morrison court relies upon the statutory definitions of "employee" and "employ," see 253 F.3d at 11, but fails to address the one definition that is relevant to the question that Plaintiff Hicks raises: that of the word "employer." And Donovan v. Agnew, 253 F.3d 1509, 1513 (1st Cir.1983), actually does hold the individual defendants named in the suit personally liable for the statutory infractions alleged.

Defendant Whitlock Stewart meets the statutory definition of "employer." Her alleged actions were clearly actuated by her desire to serve Defendant AAMC's interests; it can hardly be argued that she was driven by some personal motivation to punish the person who helped an employee receive overtime pay. As respects both Mr. James and Plaintiff, she was seeking to preserve the financial "bottom line" for Defendant AAMC. She was clearly "acting . . . in the interest of the employer in relation to" Plaintiff, and as such, she is an employer under both Acts.

---

[3]     Indeed, it is somewhat ironic that Defendants urge the strict application of the wording of the statute with respect to what constitutes a "protected activity" under § 215(a)(3), yet is willing to argue against the plain meaning of the words used in § 203(d) and in the local statute.

Defendant Kirch also meets the definition of "employer." As president of Defendant AAMC, he is ultimately in charge of Defendant AAMC's business, including its compliance with local and federal employment laws. See Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."), citing Donovan, supra, 712 F.2d at 1511. And Defendant Kirch ratified the behavior of Defendant Whitlock Stewart when, upon receiving Plaintiff's email describing the events leading to his termination, he chose to ignore its substance and not respond at all to Plaintiff. See Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998) ("The combined knowledge and inaction may be seen as . . . the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy."); accord Fuller v. City of Oakland, 47 F.3d 1522, 1529 (9th Cir. 1995) (where employer "stand[s] idly by" after learning of unlawful activity, such inaction "amounts to a ratification" of the unlawful acts).

As importantly, Defendants' argument does more than test the sufficiency of the pleadings; it suggests that portions of Plaintiff's Verified Complaint should be dismissed because certain legal tests have not been met (e.g., whether Defendant Whitlock Stewart "controlled [Plaintiff's] working conditions or supervised his work"; whether Defendant Kirch "fired or hired [Plaintiff], supervised his work, controlled his schedule, or determined his salary," see Defs.' Memo., at 7). Such arguments are not properly the subject of motions of dismiss; indeed, they require more discovery for purposes of fleshing out those very questions. Plaintiff's Verified Complaint adequately puts Defendants on notice of his claims as required under Civil

15

Rule 8(a); this is all that is needed to survive a motion to dismiss.

**D.** **Plaintiff's Allegations Are Sufficient to Sustain an Alternative Theory of Liability Based Upon Public Policy.**

While the District of Columbia generally recognizes the "employment at will" doctrine, exceptions to that rule allow an employee to challenge his discharge as violating public policy. See Darrow v. Dillingham & Murphy, 902 A.2d 135 (D.C. 2006); Fingerhut v. Children's Nat'l Med'l Ctr., 738 A.2d 799 (D.C. 1999); Washington v. Guest Servs., 718 A.2d 1071 (D.C. 1998); Carl v. Children's Hosp., 702 A.2d 159 (D.C. 1997); Adams v. George W. Cochran & Co., 597 A.2d 28 (D.C. 1991); Liberatore v. Melville Corp., 168 F.3d 1326 (D.C. Cir. 1999); Macintosh v. Building Owners and Managers Ass'n Int'l, 355 F. Supp. 2d 223 (D.D.C. 2005); Owens v. National Med'l Care, 337 F.Supp.2d 131 (D.D.C. 2004); Riggs v. Home Builders Inst., 203 F. Supp. 2d 1 (D.D.C. 2002). Specifically, the Court of Appeals set forth that claims for wrongful discharge in violation of public policy should "make a clear showing, based on some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution." Carl, 702 A.2d at 164 (Terry, J., plurality concurrence), quoted in Fingerhut, 738 A.2d at 803. In addition, "there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." Id., quoted in Fingerhut, 738 A.2d at 803 n.7.

The DCMWA expressly provides that "[t]he Council of the District of Columbia finds that persons employed in the District of Columbia should be paid at wages sufficient to provide adequate maintenance and to protect health." D.C. Code § 32-1001(a). The policy of this subchapter is to ensure the elimination of "the problem of insufficient wages." D.C. Code § 32-

1001(b). Likewise, the FLSA addresses Congressional determinations with respect to "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).[4]

Both Congress and the D.C. Council have determined, and mandated in these statutes, that certain employees who work in excess of a certain number of hours per week are entitled to compensation over and above their standard rate of compensation. Plaintiff Hicks sought to vindicate the purpose expressed by these statutes by ensuring that Erik James was paid "at wages sufficient to provide adequate maintenance and to protect health." As alleged in the Verified Complaint, Defendants – in particular Defendant Whitlock Stewart, acting as a de facto agent for Defendant AAMC – balked at the prospect of paying Mr. James his due. Indeed, Defendant Whitlock Stewart demonstrated her unwillingness to pay Mr. James appropriately when she stated her intent to conduct an investigation of Mr. James and fire him if she could prove that Mr. James's time accounts were incorrect. Plaintiff Hicks interceded on Mr. James's behalf and assisted him in proving that his time submissions were accurate. Plaintiff Hicks thereby acted to vindicate the policy embodied in the statutes.

In return for his advocacy on Mr. James's behalf, Defendant Whitlock Stewart investigated Plaintiff Hicks and terminated his employment.[5] Apparently angered that Defendants had to pay Mr. James the wages he claimed due him, Defendant Whitlock Stewart

---

[4]    There is no impediment to basing a wrongful discharge tort on a policy expressed in federal, as opposed to District, law. See, e.g., Macintosh v. Building Owners and Mgrs. Ass'n, 355 F. Supp.2d 223 (D.D.C. 2005).

[5]    One would surmise Defendant Whitlock Stewart channeled the energy she would have put into investigating Mr. James's requests for overtime into investigating Plaintiff Hicks instead.

turned her attention to Plaintiff Hicks, whom she punished for having assisted Mr. James in his endeavor.  This termination was effected as a direct result of Plaintiff Hicks's attempts to ensure that the minimum wage statutes at issue here were properly administered.

Therefore, assuming all the allegations in the Verified Complaint to be true, Plaintiff Hicks has alleged sufficient facts upon which to base a claim for wrongful discharge in violation of public policy.

**IV.**

WHEREFORE, for the reasons stated herein, Defendants' motion to dismiss should be DENIED.

Respectfully submitted,

_____/s/_____
Michael J. Hoare [DC Bar # 206979]

_____/s/_____
Dennis Chong [DC Bar #471131]
MICHAEL J. HOARE, P.C.
1101 14th Street NW, Suite 710
Washington, D.C. 20003
202-408-7901
202-408-7903 (fax)
Attorneys for Plaintiff

18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DEMETRIUS HICKS                         )
                                        )
               PLAINTIFF,               )
                                        )        CASE NO.  07-0123 (ESH)
        v.                              )
                                        )
ASSOCIATION OF AMERICAN                 )
MEDICAL COLLEGES, et al.,               )
                                        )
               DEFENDANTS.              )
_____)

**<u>ORDER</u>**

Upon consideration of Defendant's Motion to Dismiss and Plaintiff's opposition thereto,

it is this _____ day of _____, 2007

ORDERED that the motion is DENIED.


                              _____
                              Judge Ellen S. Huvelle


1