UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DEMETRIUS HICKS,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 07-0123(ESH) |
| **ASSOCIATION OF AMERICAN MEDICAL COLLEGES,** *et al.*, | ) |
| **Defendants.** | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants Association of American Medical Colleges ("AAMC"), Darrell G. Kirch, M.D. ("Kirch") and Donna Whitlock Stewart ("Stewart") (collectively "Defendants"), by and through counsel, hereby submit this Memorandum of Law In Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss.

The Complaint warrants dismissal for several reasons. First, Plaintiff's cooperation with Defendants' efforts to comply with the FLSA and the DCMWA does not constitute "protected activity". Second, the individually named Defendants do not qualify as employers under either statute. Third, because the DCMWA provides a private right of action, a common law wrongful discharge claim for alleged DCMWA violations is precluded. Faced with these insurmountable challenges, Plaintiff's Opposition impermissibly revises certain allegations of the Complaint, misinterprets applicable case law, and recites irrelevant public policy considerations. Defendants respectfully submit that after reviewing Plaintiff's Opposition, it should be abundantly clear to the Court that the Complaint fails to state any claims upon which relief can be granted.

LDR/191658.1

**ARGUMENT**

1.  **Plaintiff's Cooperation with Defendants' Efforts to Comply with the FLSA and the DMWCA Does Not Constitute Protected Activity.[1]**

Plaintiff contends that his cooperation with the Defendants' self-initiated compliance efforts with respect to other employees besides Plaintiff constitutes protected activity for the purposes of his retaliation claim. He simply is wrong.

This Court has recently stated that internal complaints of the type alleged in this case are unprotected. *See Mansfield v. Billington*, 432 F.Supp. 2d 64, 75 (D.D.C. 2006) (in interpreting retaliation provision of Equal Pay Act, which incorporates the FLSA's retaliation provision, court held that informal complaints were not protected activity) (citing *Ball v. Memphis Bar-B-Q Co., Inc.,* 228 F.3d 360, 363-65 (4th Cir. 2000) (holding that the FLSA's language did not protect a plaintiff who told his employer that he might testify if a co-worker brought an employment discrimination lawsuit because the Act protects the act of giving testimony, not merely voicing opposition to an employer); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) (comparing FLSA's restrictive language to Title VII's inclusive language and concluding that voicing complaints to supervisors is not protected activity under the FLSA).

Despite the clear applicability of *Mansfield*, Plaintiff desperately urges the Court to ignore its well-reasoned decision. Absent any support in this jurisdiction, Plaintiff argues that *Mansfield* is unreliable, in part because it is based upon this Court's misinterpretation of the holding in *Ball*. *See* Opposition at pp.8-9. Plaintiff maintains that the Court should adopt his

---

[1] As noted in the Defendants' Motion to Dismiss, Courts consider FLSA and DCMWA claims similarly. *See Moncrief v. Daro Realty, Inc.*, No. Civ. A. 03-762 (GK), 2005 WL 1119794, at *7 (D.D.C. Apr. 28, 2005) (applying same standard for FLSA and DCMWA claims); *Calles v. BPA Eastern US, Inc.*, Civ. A. No. 91-2298-LFO, 1991 WL 274268, at *1 (D.D.C. Dec. 6, 1991) (noting that there is legislative history evidence that the DCMWA is to be construed consistently with the FLSA).

LDR/191658.1

interpretation of *Ball*, thereby affording unintended and unwarranted protection to internal complaints.  Plaintiff's interpretation, however, is based solely upon a footnote reference to *Rayner v. Smirl*, 873 F.2d 60 (4th Cir.1989), a Federal Railroad Safety Act decision.  *See Ball*, 228 F.3d at 363 (noting that retaliation provision in the Federal Railroad Safety Act included intra-company complaints).  Despite this reference, neither *Ball* nor any other Fourth Circuit decision extended the *Rayner* analysis to the FLSA.  Therefore, Plaintiff, not Defendants, misinterpreted the Fourth Circuit's holding.  *See Whitten v. City of Easley*, 62 Fed. Appx. 477, 480 (4th Cir. 2003) (reiterating its holding in *Ball* by explicitly stating that informal complaints are <u>unprotected</u> under the FLSA.)  The fact that several other federal circuit courts may have held that internal complaints are protected is irrelevant, because those cases were incorrectly decided, and are inconsistent with existing case law in this jurisdiction.

Even assuming that the Court declines to follow *Mansfield*, Plaintiff's claims still fail as a matter of law.  An obvious and fundamental flaw in Plaintiff's claim is that he did not file a "complaint", formal or otherwise.  He merely responded to the Defendants' inquiry regarding his subordinate's working hours for the purposes of computing overtime compensation.  *See Claudio Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004) (finding employee's conduct unprotected because it occurred after corrective actions were being taken to remedy any FLSA violations).  Plaintiff asserts that after his submission of Eric James' time records, Defendants properly compensated James.  *See* Complaint at ¶19.  He also claims that Defendants also paid other re-classified employees for overtime compensation.  *See id*. at ¶¶10-12.  Clearly, he did not take any action adverse to the Defendants which could form the basis for a retaliation claim.  *See Claudio-Gotay*, 375 F.3d at 102 ("It is the assertion of statutory rights by taking some action adverse to the company that is the hallmark of protected activity under 215(a)(3)").

Plaintiff's reliance on *McDaniel v. Transcender, LLC*, 119 Fed. Appx. 774, 778-80 (6th Cir. 2005) is misplaced.  There, the Sixth Circuit found that a human resources manager engaged in protected activity by opposing the employer's classification of employees for overtime purposes.  Contrary to this case, however, the employer was unwilling to pay the employees at issue overtime and unjustifiably modified their job descriptions to support the classifications. The fact that Stewart initially questioned the accuracy of the submitted documentation does not alter this conclusion. Certainly, an employer may adopt quality control procedures to check the accuracy of information while still complying with the FLSA and the DCMWA.  And, in any event, there is still no allegation that Plaintiff made a complaint, informal or otherwise. Accordingly, a finding of protected activity in this instance contravenes the letter and spirit of both statutes.

Realizing the deficiency in his claims, the Plaintiff attempted to change his allegations. Contrary to his Complaint, Plaintiff now alleges that he submitted supporting documentation for James only after Defendant Stewart wrongfully expressed her distrust in the accuracy of James' overtime records.  *See* Opposition at p. 2.  Plaintiff suggests that his submission was gratuitous rather than related to his duties.  Accordingly, Plaintiff argues that his actions were clearly adverse to  Defendants' interests.  However, Plaintiff may not cure the deficiencies in his Complaint through his Opposition. *See Anderson v. Aset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004) ("…a memorandum of law is not a proper vehicle for rewriting or amending the complaint").

The Complaint expressly provides that in response to the Defendants' directive, Plaintiff forwarded information about projects and weekend work performed by James. *See* Complaint at ¶¶14, 15. While Plaintiff does not admit that he was acting as James' supervisor, he does not

LDR/191658.1

deny it, and he admits that he had "first-hand knowledge of his efforts". *See* Opposition at pp. 2, 3. Clearly, Plaintiff "never crossed the line from being an employee merely performing his job duties to an employee lodging a complaint or asserting a right". *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1487 (10th Cir. 1996) (holding that to engage in protected activity, the employee must step outside his or her role of representing the Company). Accordingly, Plaintiff has failed to allege facts sufficient to support a retaliatory discharge claim under the FLSA or the DCMWA.

**2.     The Individual Defendants Cannot be Held Liable Under the FLSA or the DCMWA.**

While both the FLSA and the DCMWA broadly define the term "employer", neither imposes blanket liability upon all managerial employees. Instead, the Court undertakes an "economic realities analysis" to determine whether individual liability is appropriate. *See Fegley v. Higgins,* 19 F.3d 1126, 1131(6th Cir. 1999) (factors include individual's power to hire and fire, supervise and control employee's work schedule or other aspects of employment, and determine salary). Otherwise, the FLSA and the DCMWA would impermissibly impose liability upon any managerial employee, regardless of whether or not they had a role in the alleged unlawful activity. Plaintiff, however, argues that any analysis of these economic factors is premature as it "requires more discovery". *See* Opposition at p. 15. Although at this stage, Plaintiff need not prove the existence of any of these factors, he must sufficiently allege them. *See Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). He has failed to make those allegations. Indeed, it is clear from the allegations in Plaintiff's Complaint that he was not employed by Kirch or Stewart.

Individual liability arises when a corporate officer either controlled the employee's working conditions or the aspect of employment alleged to have been violated. *See Escobar v.*

*Orlando Brewing Partners, Inc.*, No. 6:05-CV-63-ORL, 2005 WL 3288749, at* 2 (D.M.D. Fla. Dec. 5, 2005) (citing *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986)).  Here, Plaintiff has alleged neither.  The fact that Kirch was allegedly unresponsive to his post-termination letter clearly does not render him Plaintiff's employer under the FLSA or the DCMWA.  There is absolutely no allegation that Kirch had anything to do with AAMC's pay practices or the termination of Plaintiff's employment.

While Plaintiff alleges that Stewart fired him, he does not allege any additional relevant factors. *See Morrison v. International Programs Consortium, Inc.*, 253 F.3d 5, 11 (D.D.C. 2001) (finding that no one factor is dispositive of employment status).  To salvage his claim, Plaintiff contends that Stewart was his employer because with respect to "both Mr. James and Plaintiff, she was seeking to preserve the financial 'bottom line' for Defendant AAMC." *See* Opposition at p. 14.  Therefore, Plaintiff maintains that she was clearly "acting in the interest of AAMC" for purposes of the FLSA and the DCMWA. *See id*.  This argument, however, lacks merit.  Plaintiff admits that Defendants initiated the compensation policy review and subsequently paid James and other employees. *See* Complaint at ¶¶12, 13, 19.  Stewart, therefore, was not impermissibly preserving AAMC's bottom line.  The Court should reject Plaintiff's conclusory allegations that Stewart was his employer for the purposes of either statute. Accordingly, Plaintiff has failed to allege sufficiently that either Kirch or Stewart is an employer, and they should be dismissed from this action.

3.     **The DCMWA's Retaliation Provision is the Exclusive Remedy for Plaintiff's Alleged Wrongful Termination.**

The District of Columbia recognizes the very limited common law tort of wrongful discharge in violation of a public policy. *See Adams v. George W. Cochran & Co.*, 597 A.2d 28,

34 (D.C. 1991). As Plaintiff correctly notes, a valid public policy exists for enforcement of the DCMWA.[2] Indeed, the DCMWA's public policy considerations are so compelling, the legislature expressly provided for a private right of action. The DCMWA, therefore, is the Plaintiff's exclusive remedy. *See Nolting v. National Capital Group, Inc.*, 621 A.2d 1387, 1390 (D.C. 1993). Although Plaintiff cites many cases that address the public policy exception, he does not even address *Nolting*, nor does he offer any explanation as to why this case is distinguishable from its holding. Accordingly, Plaintiff's wrongful discharge claim must be dismissed in its entirety.

---

[2] While Plaintiff's Complaint only cited alleged violations of the DCMWA as a basis for his wrongful discharge claim, his Opposition alleges the FLSA as an additional basis. *See* Opposition at p.17. However, this impermissible addition fares no better than the DCMWA wrongful discharge claim.

LDR/191658.1

## Conclusion

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice, and that it award to Defendants their reasonable attorneys' fees and costs, and such further relief as the Court may deem proper.

Respectfully submitted,

/s/
Michael L. Stevens, D.C. Bar No. 384887
Arent Fox LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
(202) 857-6000
Counsel for Defendants

Dated: February 12, 2007

LDR/191658.1