UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**DEMETRIUS HICKS,**                )
                                    )
       **Plaintiff,**       )
                                    )
       v.                   )   Civil Action No. 07-00123 (ESH)
                                    )
**ASSOCIATION OF AMERICAN**         )
**MEDICAL COLLEGES, et al.,**       )
                                    )
       **Defendants.**      )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiff Demetrius Hicks has brought suit against his former employer, the Association of American Medical Colleges ("AAMC"); Dr. Darrell G. Kirch, M.D., the President of AAMC; and Donna Whitlock Stewart, the Vice President and Director of Human Resources at AAMC. Plaintiff alleges that his termination was retaliatory in violation of the District of Columbia Minimum Wage Act, D.C. Code §§ 32-1001 to -1015 ("DCMWA") (Count I) and the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") (Count II), and that defendants wrongfully discharged him in violation of public policy (Count III). Defendants have moved to dismiss all counts for failure to state claims upon which relief may be granted. As explained herein, the Court will grant defendants' motion and dismiss this case with prejudice.

### BACKGROUND

According to the complaint, plaintiff began employment with AAMC, an association of medical schools, in May 2005. (Compl. ¶ 6.) In June 2006, AAMC converted some of its employees from salaried to hourly status, entitling them to overtime compensation for subsequent hours worked. (*Id.* ¶ 10.) AAMC also decided to provide limited retroactive

overtime pay to some employees. (*Id.* ¶ 11.) Its human resources department, led by Donna Whitlock Stewart, asked employees to submit information detailing their entitlement to such payments. (*Id.* ¶ 14.)

Plaintiff forwarded to Stewart a list of weekend work performed by a co-worker, Eric James. (*Id.* ¶ 15.) Stewart replied that she did not trust the information, and that she would fire plaintiff if she could demonstrate that it was inaccurate. (*Id.* ¶ 16.) Plaintiff then provided Stewart with records indicating that James had in fact been in the AAMC building on particular weekends. (*Id.* ¶ 17.)

James eventually received the overtime pay. (*Id.* ¶ 19.) However, on July 27, 2006, plaintiff was terminated from his employment. (*Id.* ¶ 21.) Stewart told plaintiff that she had discovered two inaccuracies in his original job application. (*Id.* ¶¶ 21-22.) On August 1, 2006, plaintiff responded by writing a letter to Dr. Kirch expressing his concern that he had been terminated in retaliation for his attempts to help James secure overtime pay. (*Id.* ¶ 25.) Kirch acknowledged receipt of the letter, but he did not respond to its allegations. (*Id.* ¶ 26.)

Plaintiff filed suit in the District of Columbia Superior Court on December 27, 2006. Defendants removed the action to federal court on January 18, 2007. Defendants have now moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), raising essentially two issues: (1) whether plaintiff's furnishing of documentation in support of James' request for overtime pay is protected activity under the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3) and the DCMWA, D.C. Code § 32-1010(3), and (2) whether plaintiff has stated a common law claim for wrongful discharge. As the Court concludes that plaintiff has no viable claims, it need not address the alternative argument of Kirch and Stewart that they cannot be

2

sued individually.

## ANALYSIS

**I.     Standard of Review**

As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, (May 21, 2007), a complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965.

**II.    The Fair Labor Standards Act and the D.C. Minimum Wage Act**

The FLSA and the DCMWA contain nearly identical anti-retaliation provisions.[1]  At

---

[1] The FLSA provides that it shall be unlawful to

> Discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3).

issue in this case is the language, common to both statutes, rendering it unlawful for an employer to discharge an employee because he has "filed any complaint" under or related to the statute. Given the similarity of the language, the two provisions are best understood as embodying a similar legal standard. *See Calles v. BPA Eastern US, Inc.,* No. 91-2298, 1991 WL 274268, at *1 (D.D.C. Dec. 6, 1991) (unreported) (noting legislative history suggesting the DCMWA and the FLSA should be similarly construed).

In order to state a claim for retaliation under the FLSA, plaintiff must allege that his employer was aware that he was engaged in statutorily protected activity, that his employer took adverse action against him, and that there was a causal relationship between the two. *Caryk v. Coupe*, 663 F. Supp. 1243, 1253 (D.D.C. 1987). The threshold question is thus whether plaintiff was involved in statutorily protected activity -- whether he had "filed any complaint" -- when he sought to aid James in procuring retroactive overtime pay.

There is disagreement in the circuit courts about whether an informal or internal complaint qualifies as "any complaint" within the meaning of § 215(a)(3). The Courts of Appeals for the First, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have all concluded that such a complaint is protected activity. *See Valerio v. Putnam Assocs.*, 173 F.3d 35, 44 (1st Cir. 1999) ("[T]he FLSA's anti-retaliation provision will protect an employee who

---

The DCMWA provides that it shall be unlawful to

> Discharge or in any other manner discriminate against any employee because that employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this subchapter or has testified or is about to testify in any proceeding. D.C. Code § 32-1010(3).

has filed a sufficient complaint with an employer."); *Brock v. Richardson*, 812 F.2d 121, 127 (3d Cir. 1987) (employer's mistaken belief that employee had filed an external complaint grants employee statutory protection); *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989-90 (6th Cir. 1992) (telling an employer it may be "breaking some sort of law" is protected activity); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179, 180 (8th Cir. 1975) ("The Act prohibits discrimination against an employee who asserts or threatens to assert his or her FLSA rights."); *Lambert v. Ackerley*, 180 F.3d 997, 1004 (9th Cir. 1999) ("[I]t must protect employees who complain about violations to their employers, as well as employees who turn to the Labor Department or the courts for a remedy."); *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984) ("The Act also applies to the unofficial assertion of rights through complaints at work."); *EEOC v. White & Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) ("[T]he unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute.").

      The Courts of Appeals for the Second and Fourth Circuits disagree, ruling that an informal complaint is not protected activity. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) (contrasting FLSA's anti-retaliation provision with Title VII's more expansive provision); *Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 364 (4th Cir. 2000) (the anti-retaliation provision's testimony clause requires the existence of an external proceeding, and not just an internal threat to give testimony).[2]  While the D.C. Circuit has not addressed the issue, two

---

[2] The parties disagree about the scope of *Ball*'s holding. Plaintiff argues that the holding is limited to the testimony clause of § 215(a)(3) ("has testified or is about to testify in any such proceeding"), and thus, he argues that it is not relevant to this case, which centers on the complaint clause ("filed any complaint"). This reading has been contradicted by the Fourth Circuit in *Whitten v. City of Easley*, 62 F. App'x 477 (4th Cir. 2003) (unpublished) (describing

judges on this Court favor the minority position espoused by the Second and Fourth Circuits. *See Mansfield v. Billington*, 432 F. Supp. 2d 64, 74 (D.D.C. 2006) ("The plain language . . . expressly limits the scope of its application."); *Rodriguez v. Puerto Rico Fed. Affairs Admin.*, 338 F. Supp. 2d 125, 130-31 (D.D.C. 2004) (suggesting in dicta that the narrower construction is more consistent with the statutory language), *rev'd on other grounds,* 435 F.3d 378 (D.C. Cir. 2006).

This Court need not choose sides, since even under the majority's broad interpretation of the anti-retaliation provision, plaintiff has failed to provide any facts that would meet the plausibility standard set forth in *Bell Atlantic*. No matter what standard is used, plaintiff had to make some kind of complaint to his employer protesting the employer's practices under the FLSA or the DCMWA. But here, plaintiff alleges no more than a disagreement about the quality of documentation needed to satisfy AAMC's own internal review, not an assertion of rights under the FLSA or the DCMWA.

This conclusion is mandated by the case law that interprets the term "complaint" in the FLSA's anti-retaliation clause. As observed by the Ninth Circuit, "[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)." *Ackerley*, 180 F.3d at 1007. For instance, in *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478 (10th Cir. 1996), the court explained that "it is the assertion of statutory rights (*i.e.*, the *advocacy* of rights) by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)." *Id.* at 1486. In that case, a personnel manager

---

*Ball*'s holding as "the FLSA's anti-retaliation provision does not extend to internal complaints").

was fired after she suggested that the company's wage and hour policies might violate the FLSA. It was therefore not sufficient that plaintiff was attempting to bring the company into compliance with the law, as opposed to asserting rights, for "[i]n order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *Id.* at 1486-87 (footnote omitted).

The First Circuit took a similar view in *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99 (1st Cir. 2004). After the company was notified of a potential FLSA violation and had started taking steps to correct it, plaintiff refused to continue approving other employees' wage invoices until the problem was fully solved. The court held that this refusal was not protected activity. "The FLSA's anti-retaliation provision protects an employee's lawful efforts to secure rights afforded by the FLSA. The FLSA does not, however, provide a shield against legitimate employer actions. [The plaintiff's] refusal to sign the invoices occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations." *Id.* at 103 (internal quotation marks and citation omitted). The same analysis applies here, since plaintiff's actions occurred after the company was aware of a potential violation and was taking steps to remedy it.[3]

---

[3] The result here is also consistent with the cases that analyze Title VII's opposition clause, which requires plaintiff to have opposed a "practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000(e)-3(a); *see, e.g.*, *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 262 (1st Cir. 1999) (a complaint is not protected because it did not allege violations of any law); *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)

By contrast, those cases where an informal complaint has been found to be protected activity present facts markedly different from those alleged here. In *Valerio*, the plaintiff and her employer disagreed about whether her job required her to be in the office for certain hours every day so that she could answer the phone. She wrote a letter to her employer specifically raising her rights under the FLSA: "If you insist on classifying me as a receptionist, then I demand under FLSA that I be reclassified as non-exempt and be paid for all overtime hours worked." 173 F.3d at 38. In *Brock*, when the employer was contacted by compliance officers at the Department of Labor, he mistakenly thought that a complaint had been filed by the plaintiff and retaliated by terminating his employment. 812 F.2d at 123. Though the employer was mistaken, he acted upon the belief that the employee was asserting his rights. *Id.* In *Romeo*, the employee told the employer it was likely "breaking some sort of law" because of a disparity in pay between male and female custodians. 976 F.2d at 989. In *Brennan*, after the Department of Labor had determined that certain employees were due retroactive wages, the employee refused to comply with her employer's request that she endorse her check back to the employer so that the funds could be provided at a later date, since she believed the scheme was unlawful. 513 F.2d at 180-81. In *Ackerley*, the plaintiff requested a meeting with her employer to discuss overtime pay. She was told that she was free to sue her employer if she chose, but that she would be fired if she continued to press the issue. 180 F.3d at 1001. In *Love*, the plaintiff wrote

---

("A general complaint of unfair treatment does not translate into a charge of illegal [age] discrimination."); *Thomas v. Ragland*, 324 F. Supp. 2d 950, 971-72 (W.D. Wis. 2004) (a complaint about inappropriate behavior, if it does not allege illegal action, is not protected).

a letter to the company president requesting a raise and attaching a copy of the Equal Pay Act.[4] 738 F.2d at 384. Finally, in *White & Son*, several female employees met with their employer to complain that men were receiving better pay. 881 F.2d at 1007-08. The common thread linking all these cases is that the employees undertook to raise their rights under the statute and to complain about the employer's practices. That is not what happened here.[5]

Applying the rationale of the above cases to plaintiff's allegations, the Court concludes that the facts alleged by plaintiff regarding his disagreement with AAMC do not rise to the level of an informal complaint, even as that term has been interpreted by the circuit courts which have adopted an expansive reading of FLSA's anti-retaliation provision. AAMC was seeking to bring itself into compliance with the FLSA, and it had merely asked its employees for assistance in documenting who was entitled to retroactive overtime pay. Plaintiff, rather than seeking to

---

[4] The Equal Pay Act, 29 U.S.C. § 206(d), is an amendment to the FLSA and is codified under the same chapter of the U. S. Code. Retaliation for filing EPA complaints thus falls under § 215(a)(3). *Genesee*, 10 F.3d at 55.

[5] In response, plaintiff cites to *McDaniel v. Transcender, LLC*, 119 F. App'x 774 (6th Cir. 2005) (unpublished). (Pl.'s Opp. at 12.) This reliance is misplaced. In *McDaniel*, a human resources manager undertook a review of all the company's employees to determine if they were properly classified as exempt or non-exempt from FLSA's overtime provisions. She determined that many exempt employees should have been classified as non-exempt and notified her employer of her findings. *Id.* at 777-78. The district court found that her review was protected activity, but granted summary judgment for the defendant because the causal link between the plaintiff's FLSA investigation and her firing was not clear. In remanding, the Sixth Circuit did not explicitly address whether the activity was protected. *Id.* at 780. In addition, the protected activity at issue in *McDaniel* is distinguishable from the present facts. In *McDaniel*, it was the plaintiff who began the internal FLSA review. After she proposed to the employer the need to reclassify numerous employees as non-exempt, the company responded by changing the job titles of some of the employees in question. There was a disagreement between the parties about the requirements of FLSA that was far more substantive than the disagreement here about the quality of documentation needed to establish that an employee has actually performed overtime work.

assert any rights under the FLSA or the DCMWA, was cooperating with AAMC's internal review, and in this capacity, he was merely disputing defendants' insistence on more adequate documentation.[6]  Therefore, Counts I and II will be dismissed.

### III.    Wrongful Discharge

Plaintiff also claims that he was wrongfully discharged in violation of public policy.  The Court of Appeals for the District of Columbia, however, has only recognized a very narrow public policy exception to the doctrine of at-will employment.  "It has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all."  *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991).  However, in *Adams*, the Court of Appeals recognized a public policy exception to at-will employment, allowing a former employee to sue after he was fired for refusing to drive a truck lacking a required inspection sticker.  *Id.* at 33-34.  The court explained that when an employee is fired solely for refusing to violate a law, he has a viable claim for wrongful discharge.

Thereafter, the Court of Appeals, sitting en banc, extended the public policy exception to a nurse who was terminated for advocating for patients' rights before the legislature and the courts.  *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997) (per curiam).  Although the per curiam opinion did not offer guidance on the scope of the newly expanded public policy exception, a plurality of four judges wrote than in order to constrain the application of the public policy exception, courts should require that the public policy to be served be expressed in the

---

[6] The sole action taken by plaintiff that could plausibly stand as protected activity was his letter to Kirch in which he claimed that his termination had been retaliatory.  Because he was writing to complain about his termination after it had occurred, it is beyond dispute that his letter cannot have caused his termination.

Constitution, a statute, or a regulation, and that there be a "close fit" between the declared policy and the conduct at issue. *Id.* at 164 (Terry, J., concurring). The plurality opinion was subsequently adopted by the Court of Appeals in *Fingerhut v. Children's National Medical Center,* 738 A.2d 799, 803 (D.C. 1999). It has also been applied by the D.C. Circuit. *Warren v. Coastal Int'l Secs.*, 96 F. App'x 722, 723 (D.C. Cir. 2004) (unpublished).

In the instant case, plaintiff points to the DCMWA and the FLSA as the sources of the public policy, arguing that both express the value of workers' earning fair wages. (Pl.'s Opp'n at 16-17.) This argument fails for both a factual and a legal reason.

First, there is an insufficiently close fit between plaintiff's conduct and the public policy goals to be served by the FLSA and the DCMWA. For the reasons discussed above in Section II, *supra*, plaintiff's disagreement with his employer is not encompassed within the provisions of the FLSA and the DCMWA, since he failed to file any complaint protesting the employer's activities under the statutes, and the existence of laws governing wages and hours is not a license for this Court to impose requirements of its own making.

The second problem is that, even assuming that plaintiff's activity was protected by the FLSA and the DCMWA (which it was not), those statutes provide plaintiff's exclusive remedy and preclude application of wrongful discharge in violation of public policy under *Nolting v. National Capital Group*, 621 A.2d 1387 (D.C. 1993). In that case, an employee who was terminated after bringing a workers' compensation claim brought suit for wrongful discharge, instead of pursuing the administrative remedy provided by the District of Columbia Workers Compensation Act, D.C. Code §§ 32-1501 to -1545. Contrasting the case with *Adams*, the court noted that because the Act creates its own remedy, the statutory remedy is presumed to be

exclusive. *Id.* at 1389. *See also Smith v. Police & Firemen's Ret. & Relief Bd.*, 460 A.2d 997, 1000 (D.C. 1983) ("When a statute provides a comprehensive enforcement scheme for violations of its substantive provisions, a legislative intent to provide an exclusive remedy may be inferred. . . .").

For these reasons, plaintiff fails as a matter of law and fact to make out a claim for wrongful discharge in violation of public policy, and therefore, Count III will be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted, and the above-captioned complaint is dismissed with prejudice.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: May 31, 2007